IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHERRY COLLINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:04cv0390 |
| CLEAR CHANNEL ENTERTAINMENT, INC., CLEAR CHANNEL COMMUNICATIONS, INC., and PAVILION PARTNERS, | ) Judge Thomas A. Wiseman, Jr. ) ) ) |
| Defendants. | ) |

**MEMORANDUM**

Before the Court are four pretrial motions in limine to exclude certain evidence, one filed by Plaintiff (Doc. No. 43), and three filed by Defendant Pavilion Partners (Doc Nos. 29, 30, and 31). For the reasons explained below, the Court will deny each of these motions.

**I.      PLAINTIFF'S MOTION IN LIMINE**

Plaintiff moves to exclude certain potential exhibits and witnesses identified by Defendant (Doc. No. 43). Specifically, Plaintiff seeks to exclude the following exhibits: (1) Incident report completed by Ashley Raye; (2) Empact Medical Services Report; (3) Southern Hills Medical Center Emergency Room Report dated 4/5/03; (4) Photographs taken by Michael Workman other than the exact copies that are attached as exhibits to Mr. Workman's deposition transcript; (5) photographs of Starwood Amphitheater; and (6) Diagram/blueprint of Starwood Amphitheater. Plaintiff also seeks to exclude testimony from Ashley Raye and Patrick Leahy, who are listed on Defendant's Witness List. Each of Plaintiff's arguments is addressed in turn below.

      **A.      Motion To Exclude Exhibits**

           *(1) Incident Report By Ashley Raye*

Ashley Raye is or was an employee of Defendant who wrote an Incident Report concerning Plaintiff's accident on Defendant's premises, presumably at or near the time of the incident. Plaintiff claims that Defendant has not produced this document, that it is hearsay, and that Defendant has failed to provide contact information for Ms. Raye on either Defendant's witness list or initial disclosures. Plaintiff argues that, unless Ms. Raye testifies, the Incident Report she prepared cannot be authenticated and therefore will not be admissible into evidence.

Defendant responds (Doc. No. 73) that: (1) the Incident Report was produced as part of its initial disclosures on July 6, 2004, Bates No. D002; (2) the Incident Report is part of Defendant's business records prepared and kept in the normal course of business, and its authenticity can be confirmed by a custodian of records for Defendant at trial; and (3) Ms. Raye's address and phone number are on the Incident Report itself, although Defendant admits the information on the Report is not current and Defendant does not have a current address for Ashley Raye.

Defendant has not introduced an affidavit or other proof that the document was actually produced with Defendant's initial disclosures, but the Court finds that the question of whether the document was actually produced with Defendant's Rule 26 disclosures is not dispositive.[1] Plaintiff's Motion will be denied without prejudice to Plaintiff's ability to raise her objection again at trial if Plaintiff can establish that the report was not produced in response to a properly served request for production of documents under Rule 34,[2] or if the Report is not properly authenticated as a record of a regularly conducted business activity.

### *(2) Empact Medical Services Report*

The Empact Medical Services Report was apparently created by the EMTs who attended to Plaintiff immediately after her fall on Defendant's premises and before the ambulance and paramedics arrived. Plaintiff objects to introduction of this report on the grounds that Defendant has not authenticated the record and Plaintiff has not had the ability to cross-examine the person making the report. Plaintiff further objects to the report "to the extent that hearsay in the report will be used to prove that Plaintiff did not complain that. . . a hole or gully caused or contributed to her fall." (Doc. No. 43, at 2.)

In its response, Defendant argues that the Empact Medical Services Report will be properly authenticated at trial and that it is a record kept in the normal course of Defendant's business and as such falls within the business records exception, Fed. R. Evid. 803(6). Defendant further states that the persons who prepared the report were disclosed in Defendant's initial disclosures, but Plaintiff never attempted to depose those persons. (Doc. No. 73.)

Assuming that the report is properly authenticated at the time of trial, it will be admissible. The Court

---

[1] Rule 26 does not require the actual production of documents, since it also provides the option of describing "by category and location" any documents that the disclosing party intends to use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(B).

[2] Defendant claims Plaintiff never served any Rule 34 requests for production of documents.

will deny the motion without prejudice to Plaintiff's ability to re-raise her objections regarding authentication at trial.

### (3) Southern Hills Medical Center Emergency Room Report and Testimony Of Dr. Archer Regarding Same

The Southern Hills Medical Center Emergency Room Report ("ER Report") to which Plaintiff objects includes a statement under the heading "History of Present Illness" in which the attending Emergency Room physician, Dr. Archer, reported: "She basically fell down on slick grass." (Doc. No. 43, Ex. D.) Plaintiff argues that Defendant "intends to use this report as proof that Plaintiff's report of her injury to Dr. Archer was inconsistent with her claim that she fell in a hole or gully" and that she is lying about the existence of the hole and the cause of her injury. (Doc. No. 43, at 2–3, 7.) Plaintiff discusses at length Dr. Archer's deposition testimony discussing that statement, in which Dr. Archer agrees that the fact that he did not write on the Report that a hole in the ground contributed to Plaintiff's fall is not necessarily dispositive of whether Ms. Collins mentioned a hole or whether there was a hole. Plaintiff argues that the probative value of the ER Report and of Dr. Archer's testimony on the subject is minimal, and that such minimal probative value is outweighed by the likelihood of confusion of the issues, misleading the jury or unfair prejudice. See Fed. R. Evid. 403.

The Court agrees with Defendant that the ER Report is valid, probative and relevant evidence. The fact that it is potentially damaging to Plaintiff's case does not make it unfairly "prejudicial" in the sense intended by Rule 403. To the extent there is any prejudice, Plaintiff will be entitled to offer evidence from Dr. Archer explaining or mitigating the statement. Plaintiff's motion to exclude the ER Report will be denied.

### (4) Photographs By Michael Workman Of Accident Site

Michael Workman, one of Defendant's employees, took photographs of the area where he claims Ms. Collins fell. Plaintiff does not object to the introduction of these photographs and intends to use them herself. She objects, however, to the use of photographs that differ in any respect from those produced with the deposition. Plaintiff claims she requested originals, to which Defendant responded the originals were digital. Plaintiff allegedly requested the photographs on disc and was told they looked the same on disc. Plaintiff apparently never issued a formal document request for the photographs on disc and never filed a motion to compel their production on disc. Plaintiff nonetheless objects to the use at trial of any photographs whose quality is better than that of the photographs that have already been produced, on the basis that use of higher

3

quality photographs would "deny Plaintiff the opportunity to conduct meaningful discovery about the contents of the photographs."

Defendant responds that counsel does not recall Plaintiff's counsel ever requesting digital versions of the photographs introduced during Michael Workman's deposition but is willing to produce them, despite the fact that Plaintiff never served a formal written request for same during the discovery period. Defendant does not indicate whether it has in its possession or intends to introduce photographs that are of better quality than those already produced.

The Court finds that Plaintiff has not provided a valid basis for concluding that better photographs exist or may be created or, if so, for excluding them, since Plaintiff never served a formal request for the digital version of the photographs. The motion is denied.

### *(5) and (6) Photographs and Diagram/Blueprint Of Starwood Amphitheater*

Plaintiff object to the use of any photographs, blueprints or diagrams of Starwood Amphitheater that were not produced during discovery. Defendant responds that Plaintiff never requested any such documents during discovery and, in fact, that Plaintiff never served any Rule 34 requests for production of documents or to inspect Defendant's premises.

Plaintiff fails to suggest how she might be prejudiced by the referenced photographs or diagram, nor does she claim they are misleading or inaccurate. Plaintiff also does not explain why she failed to serve document requests. The motion to exclude these documents will be denied.

**B.     Motion To Exclude Witnesses**

### *(1) Ashley Raye*

Plaintiff contends Defendant has failed to provide contact information for Ms. Raye and that her contact information is not listed on Defendant's initial disclosures or witness list. Defendant responds that it listed Ms. Raye as a potential witness on both its initial disclosures and its witness list, but that Defendant does not know Ms. Raye's current contact information.

The Court concludes that neither party has made much effort to locate Ms. Raye and it appears highly unlikely she will actually be called as a witness at trial. The motion is denied without prejudice to renew it at trial should Ms. Raye be called to testify at trial.

### *(2) Patrick Leahy*

4

Plaintiff claims she sought to take the deposition of Patrick Leahy but was informed that Defendant would not produce him because he was a high-ranking officer of Clear Channel and his testimony would merely be duplicative of Defendant's corporate representative's testimony. Plaintiff purportedly chose not to pursue this deposition based upon those representations, concluding that it would be a waste of time and resources. Plaintiff now claims it would be "unfair" to allow Defendant to call Mr. Leahy to testify since Defendant refused to make him available for a deposition, and further argues that his testimony would be cumulative and a waste of time. (See also Declaration of Charles P. Yezbak, III, Doc. No. 47, ¶ 8.) Alternatively, Plaintiff requests the opportunity to depose Mr. Leahy at least one week before trial if the Court is inclined to permit him to testify.

Defendant, without filing any supporting Declarations or Affidavits, maintains that Plaintiff never noticed Mr. Leahy's deposition and that Defendant objected to Plaintiff's informal request to depose Mr. Leahy because Plaintiff sought to take the deposition well after the expiration of the discovery period.

Because Plaintiff has not produced evidence that she noticed the deposition of Mr. Leahy during the discovery period, the motion to exclude his testimony at trial on the basis that Defendant failed to produce him for a deposition will be denied.

## II. DEFENDANT'S MOTIONS IN LIMINE

### A. Defendant's Motion In Limine To Exclude Deposition Designations (Doc. No. 29):

Defendant Pavilion Partners seeks to exclude Plaintiff's deposition designations on the basis that Plaintiff failed to comply with Local Rule 9(d)(4) in that Plaintiff did not designate specific portions of the depositions she intends to be read into evidence at trial. Consequently, Defendant requests that Plaintiff be barred from introducing any deposition testimony into evidence at trial or, alternatively, that Defendant be permitted to object at trial to the introduction of specific portions of deposition testimony.

It should first be noted that Plaintiff subsequently filed a revised deposition designation in which she did identify page and line numbers to be read from each designated deposition. Moreover, trial of this matter, originally scheduled to begin December 6, 2005, has been continued, so Defendant has not been prejudiced by Plaintiff's late filing. Defendant's Motion will therefore be denied, but without prejudice to Defendant's ability later to raise objections to specific portions of designated deposition testimony.

### B. Defendant's Motion In Limine To Exclude Testimony (Doc. No. 30):

5

*(1) Testimony Of Patricia Beels*

Patricia Beels testified in her deposition that after Ms. Collins fell, the paramedics did not arrive right away. After they did arrive, Kami Collins came and stood next to Ms. Beels. Ms. Beels asked Kami what happened, and Kami allegedly responded that her mother "kind of stepped in [a] hole and fell down." (Dec. 15, 2004 Deposition of Patricia Ann Beels ("P. Beels Dep.") at 12:22 - 13:1.) Ms. Beels asked, "Where?" and Kami responded, "Right there." (P. Beels Dep. at 13:20–21.) Ms. Beels looked down and saw the purported hole right in front of her and next to where Ms. Collins was still lying on the ground. (P. Beels Dep. at 13:22 - 14:4.)

Defendant moves to exclude any testimony from Ms. Beels regarding the existence of the hole, and in particular the statements allegedly made to Ms. Beels by Kami Collins about the existence of a hole, on the basis that these statements constitute inadmissible hearsay. Defendant contends that, if Kami's statements to Ms. Beels are excluded, Ms. Beels cannot testify about the existence of the alleged hole at all. Defendant further argues that the evidence is irrelevant and its introduction would be confusing and prejudicial. Plaintiff asserts in response that the statements are admissible because they are not being offered solely for the truth of the matter asserted.

"Hearsay," of course, is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay is inadmissible unless some exception applies. Fed. R. Evid. 802. Rule 803(1) provides that a "present-sense impression" is not excluded by the hearsay rule. "Present-sense impression" is defined as a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). Somewhat similarly, Rule 803(2) provides an exception for any "excited utterance," defined as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Statements made by Kami Collins to Patricia Beels concerning the alleged hole clearly are not statements made by the declarant while testifying at trial. They will therefore be inadmissible if they are introduced to prove the truth of the matter asserted unless some exception applies. Fed. R. Evid. 802. The first part of the testimony offered by Ms. Beels—Kami Collins' alleged statement to Ms. Beels that her mother fell in a hole—is actually made up of two layers of out-of-court statements, the first layer of which is Sherry

6

Collins' alleged statement to Kami Collins that she fell in a hole. That alleged statement (which Ms. Collins does not recall making and Kami denies hearing), if offered by Kami, would be admissible as an excited utterance or present-sense impression. Fed. R. Evid. 803(a) and (b). The question, then, is whether Kami's alleged repetition of that statement to Ms. Beels falls under either exception, or, alternatively, whether it qualifies as hearsay at all—that is, whether it is being offered solely for the truth of the matter asserted.

Kami arguably was still under the stress of the event when she responded to questioning by Ms. Beels, but the fact that she was responding to questions indicates that the statements were not spontaneous and therefore cannot qualify as excited utterances. See Haggins v. Warden, Fort Pillow State Farm, 715 F.2d 1050, 1058 (6th Cir. 1983) ("[T]he ultimate question is whether the statement was the result of reflective thought or whether it was a spontaneous reaction to an exciting event.") (quoting McCormick's Handbook of the Law of Evidence § 297 at 705–06 (2d ed. 1972)). Rule 803(2) therefore does not apply in this instance.

Moreover, Kami's statement about how Sherry Collins fell, regardless of how soon after the event the statement was made, cannot qualify as a present-sense impression, because, according to Kami herself, she did not actually see her mother fall. See 5 Weinstein's Federal Evidence § 803.03[3] (2d ed. 2000) ("The proponent of the evidence must show that the event or condition about which the statement was made was perceived by the declarant.").

A closer question is presented by the fact that when Ms. Beels said, "Where?" Kami responded, "Right there" and pointed to the hole. Again, the fact that the statement is in response to questioning undermines the spontaneity of it and suggests that it was not the type of statement covered by the exception for present-sense impressions. Cf. Burrows v. General Motors Corp., 1993 WL 243780, at * 3, 999 F.2d 539 (6th Cir. July 6, 1993) (finding that statements to be introduced "were not spontaneous, but rather were words in response to questions about [decedent's] truck," which "undermine[d] the application of the exception contained in Rule 803(1)"). On the other hand, "right there" clearly is the type of statement one makes while perceiving something, and the answer to the question did not involve memory or thought, since Kami was allegedly perceiving the hole while she pointed to it and said "right there." Cf. Mills v. State, 763 So. 2d 924, 927 (Miss. 2000) (upholding trial court's admission into evidence of defendant's four-year-old son's response ("It belongs to my daddy") to a narcotics investigator's rhetorical and sarcastic question, "who does this [baggy full of marijuana] belong to," as a present-sense impression, despite defendant's argument that the exception did

7

not apply because the statement was in response to a question and not "spontaneous" in the sense of "happening or arising without apparent external cause; self-generated"). Under the circumstances, the Court concludes that the statement, "Right there," in response to the question "Where?" does fall under the present-sense impression exception to the hearsay rule, even though the statement was offered in response to a question, since the statement did not involve memory or thought, and was offered while Kami was in the process of perceiving something.

Further, the Court finds that the entire exchange is admissible to show Ms. Beels' state of mind when she consciously looked for and noticed the hole into which Ms. Collins allegedly fell. A statement is properly admissible when it is not offered to prove the truth of the matter asserted but is offered to show its effect on the hearer. United States v. Horton, 847 F.2d 313, 324 (6th Cir. 1988). In this case, Ms. Beels obviously should be permitted to testify about what she allegedly saw with her own eyes, and the testimony regarding the exchange with Kami Collins will be admissible to show why Ms. Beels was looking around for and noticed a hole in the grass in the first place.

Defendant's motion to exclude Ms. Beels' testimony in this regard will therefore be denied, without prejudice to Defendant's ability to request a limiting instruction at the time the testimony is offered into evidence.

### *(2) Testimony Regarding Poor or Inadequate Lighting At Starwood Amphitheater*

Defendant argues that any testimony concerning or addressing the poor or inadequate lighting at Starwood Amphitheater where Sherry Collins fell should be excluded on the basis that Plaintiff has failed to identify an expert witness to offer opinion testimony concerning the appropriate lighting levels at a concert or performance venue, and that testimony to that effect should therefore be excluded under Fed. R. Evid. 701 and 702.

Defendant cites the case of Cagle v. Gaylord Entertainment Co., 2002 WL 31728866 (Tenn. Ct. App. Dec. 5, 2002), in support of its position that expert testimony is required. In that case, the plaintiff apparently tripped over a curb that ran in front of a line of parked cars and which she allegedly could not see because it was dark between the cars. The court found that the curb, which is a common architectural feature in parking lots, did not constitute a hazardous condition and therefore granted summary judgment in defendant's favor. In reaching its decision, the court noted:

> It is conceivable that proof could be developed that would lead to the conclusion that the design and construction of the curb and the lighting in the parking lot created an unsafe, dangerous, or perilous condition. However, this record contains no such proof. There is no proof that any building code or standard was violated in the construction or maintenance of the parking lot. No expert has been produced to testify that the design or placement of the curb or the lighting violates any construction standard, any state or federal accessibility requirement, or any building code.

Id. at *3.

Even if Cagle actually supported Defendant's position, another more recent unreported Tennessee case (discussing another unreported case) has made it clear that expert testimony about the adequacy of lighting is not always necessary:

> Wilson Inn argues that we need not, and should not, credit Ms. Heggs's lay testimony on the lighting because under Threet v. Opryland USA, Inc., . . . No. 01A01-9805-CV-00255, 1999 WL 820815 (Tenn. Ct. App. July 14, 1999) . . ., expert testimony is necessary to create a triable issue as to the sufficiency of lighting. Threet does not impose such an expert requirement for lighting issues. Rather, Threet simply held that the plaintiff's lay testimony as to the sufficiency of lighting did not create a triable issue in the face of certain undisputed facts about the defendant's lighting systems and the defendant's expert's testimony as to the sufficiency of those lighting systems. Threet . . ., 1999 WL 820815, at *3.

Heggs v. Wilson Inn Nashville-Elm Hill, Inc., 2005 Tenn. App. LEXIS 535, at *18 n.6 (Tenn. Ct. App. Aug. 25, 2005). The Court concludes that Ms. Collins is not required to offer expert testimony in this case in order to create a triable issue as to the sufficiency of the lighting.

Defendant also argues that poor lighting was an "open and obvious" hazard, and that any testimony concerning poor or inadequate lighting is irrelevant, would confuse the jury, and should be excluded under FRE 401, 402, and 403. Notwithstanding, as the Plaintiff points out, this is a premises liability case, and she only has to show that the defendant failed in its duty to use reasonable care to protect its customers from unreasonable risk of harm:

> The premises owner's duty exists if the harm can or should be anticipated notwithstanding the known or obvious danger:
> "Such reason to expect harm to the visitor from known or obviously dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. . . ."

(Doc. No. 40, at 5, quoting Coln v. City of Savannah, 966 S.W.2d 34, 41 (Tenn. 1998).) Plaintiff further responds that Defendant is arguing comparative fault on the part of Plaintiff, so it would be unfair and prejudicial not to allow Plaintiff to testify as to the inadequacy of the lighting, since otherwise the jury may"jump to the conclusion that there was light equivalent to daylight at the facility and that Ms. Collins simply was not

9

looking [where she was going]." (Doc. No. 40, at 7.)

The Court concludes that, while the question of the adequacy of the lighting is likely of minimal relevance, it is sufficiently relevant to be admissible, particularly since Defendant is raising comparative fault as a defense. Moreover, the jury is certainly competent to determine whether to credit Plaintiff's testimony and to determine whether, under the circumstances, the Defendant had a duty to provide better lighting even though the concert was still under way.

Defendant's motion to exclude testimony about the level of lighting will therefore be denied.

### *(3) Testimony Concerning the Reasonableness Of Charges For Medical Services*

Defendant claims that testimony regarding the reasonableness of medical services provided to Plaintiff and the costs thereof should be excluded because Plaintiff failed to identify any expert witnesses who would offer opinion testimony concerning the reasonableness of any medical expenses incurred. Plaintiff did, however, identify her treating physicians and Defendant has apparently deposed some of them. Moreover, Rule 26(a)(2)(B) only requires expert reports from experts who are "retained or specially employed to provide expert testimony in a particular case." Generally speaking, treating physicians are considered to fall outside that rubric. Defendant's motion in this regard is without merit.

Alternatively, Defendant argues that Plaintiff's treating physicians are not qualified to offer opinion testimony concerning the reasonableness of expenses or the necessity of medical services provided by other practitioners. More specifically, Defendant claims Dr. James Renfro, Jr.[3] should not be permitted to testify as to the reasonableness of other providers' charges because he stated in his deposition that he was unable to opine that any charges, other than his own, were reasonable, and that he had not at that point had the opportunity to review any medical bills incurred by Plaintiff other than his own. Defendant also argues that Dr. Renfro's testimony that is "contrary to testimony he provided during his deposition" must be excluded.

In his deposition, however, Dr. Renfro did testify as to the reasonableness and necessity of his own and other medical providers' care and costs. Such testimony is permissible to the extent Dr. Renfro's opinion was based upon his own personal knowledge of Plaintiff's injuries and the type of care she required. See, e.g., Miller v. Choo Choo Partners, L.P., 73 S.W.3d 897, 907 (Tenn. Ct. App. 2001) (noting, in passing, that

---

[3]Dr. Renfro was called to the ER when Plaintiff was initially admitted and ultimately performed surgery on her broken leg.

10

two of plaintiff's physicians testified that the services they personally rendered to plaintiff were necessary and that their charges were reasonable, and also testified as to the necessity and reasonableness of the medical charges of other health providers). In this case, Dr. Renfro was familiar with Plaintiff's injury, since he performed surgery on her, and was able to testify as to the reasonableness of his own charges as well as those attendant to diagnostic imaging, anesthesia, the hospital stay, and prescription medications filled at a pharmacy. Dr. Renfro testified he was familiar with charges in the medical community here and that he felt the charges shown were fair, reasonable (or at least "typical"), and necessary.[4] The case law Defendant cites in support of its argument that such testimony from Dr. Renfro should be excluded is simply inapposite.[5] Dr. Renfro clearly is competent to testify as to the reasonableness of the charges at issue.

Defendant's third argument, that Dr. Renfro contradicted his own testimony, is a question of semantics. Defendant provides an excerpt from Dr. Renfro's deposition in which Dr. Renfro stated he had not thoroughly reviewed the medical bills shown to him by plaintiff's counsel prior to his deposition, that he did not set the billing rates for any other providers other than himself, and that, while he could testify that the charges were "typical," he was unable to state they were "reasonable," basically because Dr. Renfro testified that no medical charges were reasonable ("Well, as you can see charges and payments in healthcare have no reasonable rational relationship.") (Doc. No. 33, Ex. 6). In fact, Dr. Renfro testified that "billed" charges are usually "significantly" higher than what is actually accepted as payment, and that no medical providers receive or expect to receive 100% of what they charge. Consequently, Defendant argues that "testimony that 100% of billed charges are reasonable in light of the [sic] Dr. Renfro's deposition testimony would be unfairly prejudicial and, under these circumstances, lacks foundation." (Doc. No. 30, at 12–13.)

Defendant's argument amounts to an attempt to avoid application of the collateral-source rule, which

---

[4]The only exception was for certain expenses billed by Apria Healthcare some period of time after the accident occurred. With respect to those charges, Dr. Renfro stated that he did not know what they were for and could not testify as to their reasonableness or necessity. (See Doc. No. 40, at 8–9.) Plaintiff apparently does not seek to have Dr. Renfro testify about the reasonableness of those particular charges.

[5]See, e.g., Ogle v. Brandon, 1989 WL 48460 (Tenn. Ct. App. May 12, 1989) (holding that admission of physician's testimony regarding the reasonableness of another practitioner's treatment was reversible error where the physician was an orthopedic who had not actually treated the plaintiff but had only seen her once for an evaluation, and he was called upon to testify as to the reasonableness and necessity of the treatment provided and expenses billed by a chiropractor, although he admitted he was not really sure what the chiropractic treatment entailed and therefore was unable to testify regarding whether the treatment was reasonably necessary).

11

Tennessee courts have expressly adopted. See, e.g., Fye v. Kennedy, 991 S.W.2d 754, 763 (Tenn. Ct. App. 1998) (holding that the collateral source rule does not permit introduction of evidence of plaintiff's receipt of payments toward medical bills from a collateral source other than the defendant, and that payment from any such collateral source does not reduce or mitigate a defendant's liability). Plaintiff is entitled to present evidence of the total amount of her medical bills, so long as they are "reasonable," and regardless of whether her insurance company ultimately paid less than the amounts billed.

Defendant's motion to exclude evidence regarding the reasonableness of medical services provided to Sherry Collins will therefore be denied, and Defendant's attempt to avoid the collateral-source rule is overruled.

### C. Defendant's Motion In Limine To Exclude Certain Exhibits (Doc. No. 31)

Defendant moves to exclude the following exhibits:

1. Summary of Ms. Collins' medical expenses;
2. A rendering or sample of the pin and screws inserted in Ms. Collins' leg;
3. Anatomical drawings of the area injured;
4. Ms. Collins medical records (or portions thereof);
5. Exhibits summarizing live testimony or deposition testimony;
6. All medical bills, statements or receipts associated with Plaintiff's treatment;
7. Demonstrative exhibits detailing Plaintiff's damages claims;

Some of these categories are related and will be considered in conjunction withe each other.

*1 and 6.* *Summary Of Medical Expenses and All Medical Bills and Statements*

Defendant's argument in support of this motion as to both the summary and the medical bills is basically identical to that presented in support of the motion to exclude testimony regarding Plaintiff's medical expenses, which the Court has overruled. In addition, Defendant claims the summary would "necessarily include testimony regarding medical expenses that Defendant believes are unreasonable and for which there is no foundation." Plaintiff agrees that if the medical charges are inadmissible, then a summary of them will likewise be inadmissible. However, Plaintiff states she has or will prove the medical expenses at trial, and that the bills and statements, as well as a summary therefore, are admissible.

Defendant apparently does not object to the authenticity of Plaintiff's medical bills and statements.

12

They are admissible and Defendant's motion to exclude them will be denied.

With respect to the summary of medical bills and statements, the Court notes as an initial matter that such summaries are generally admissible assuming they are accurate and that a proper foundation is laid. The summary has not actually been produced and Defendant has not raised an objection based upon accuracy or lack of foundation. Accordingly, the Court will deny the motion without prejudice to Defendant's ability to renew its objection at trial based on accuracy or foundation.

### *2 and 3.     Rendering or Sample Of Pin and Screws In Ms. Collins' Leg and Anatomical Drawings Of the Area Injured*

Defendant complains these exhibits were not disclosed or produced during discovery. Plaintiff points out they are on her Exhibit List. Defendant argues these exhibits are clearly the subject matter of expert testimony and must be admitted by a qualified expert. Plaintiff responds that "anyone who witnessed the pin going into Ms. Collins' leg can testify that a rendering or sample is like the one in Ms. Collins' leg. Moreover, to the extent that Dr. Renfro would need to testify about the pin or the screws, he can be called to testify live at trial." Plaintiff further argues that Defendant will not prejudiced by introduction of this evidence because the fact that this hardware was used in her surgery is disclosed in her medical records.

Again, it appears that the type of evidence Plaintiffs seeks to admit into evidence is generally admissible assuming a proper foundation is laid. The Court will deny the motion without prejudice to Defendant's ability to raise it again at trial if a proper foundation is lacking.

### *4.     Ms. Collins' Medical Records*

Defendant argues it is unfairly prejudiced because Plaintiff has not appropriately or sufficiently identified the parts or portions that might be used. In response, Plaintiff points out that (1) Defendant cites to no authority to support its contention; (2) Plaintiff has produced and Defendant obtained its own set of Plaintiff's medical records; (3) the records are not terribly voluminous; (4) two medical depositions were taken at which the records were examined by both parties. Accordingly, the records have been produced, authenticated, and are properly admissible as exhibits. The fact that there are multiple pages to these documents does not make the designation too general.

Defendant has not objected to the authenticity of the records. They are admissible and Defendant's motion to exclude them will be denied.

### *5.     Demonstrative Exhibits*

Defendant quotes Plaintiff's designation as "Demonstrative exhibits detailing Plaintiff's claims for damages." Defendant objects to this designation on the basis that it is overly broad, ambiguous and vague, and that Plaintiff had not previously disclosed her intent to use such exhibits. In response, Plaintiff argues she has disclosed her damages claims, and the demonstrative exhibit is intended to be introduced as an exhibit summarizing the damages. Plaintiff has not yet created the exhibit.

Assuming the demonstrative exhibit is an accurate summary of evidence that is properly introduced, it will be admissible. The Court will deny the motion without prejudice to Defendant's ability to raise it again at trial.

**Conclusion**

In summary, Plaintiff's motion and Defendant's motions in limine will be denied. An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge