IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHERRY COLLINS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:04cv0390 |
| | ) |
| CLEAR CHANNEL ENTERTAINMENT, INC., | )   Judge Thomas A. Wiseman, Jr. |
| CLEAR CHANNEL COMMUNICATIONS, INC., | ) |
| and PAVILION PARTNERS, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION**

This slip-and-fall tort case presents a classic he-said/she-said situation in which the statements of various witnesses testifying under oath directly contradict the statements of other witnesses testifying under oath. As a result, the Court has no choice but to deny Defendant Pavilion Partners' Motion for Summary Judgment (Doc. No. 13).[1]

**I.    STANDARD OF REVIEW**

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita, 475 U.S. at 587; Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant.

---

[1] Pavilion Partners is the sole remaining defendant in the case, the Plaintiff having voluntarily nonsuited the other defendants. (See Doc. Nos. 5 and 9.)

Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of her case. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1388–89 (6th Cir. 1993). Of course, in responding to a motion for summary judgment, the non-moving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere conclusory allegations and subjective beliefs are not sufficient to defeat a properly supported motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990).

## II. FACTUAL BACKGROUND

Plaintiff Sherry Collins was attending a music concert at Starwood Amphitheater, which is owned and operated by Defendant Pavilion Partners, on the evening of April 5, 2003. She attended the show along with her adult daughter Kami Collins, her son and daughter-in-law, Andrew and Rebecca Collins, and some acquaintances from her church, William and Patricia Beels and their daughter Shannon Beels. They were all seated during the concert in the "festival seating area," an open grassy slope located behind the reserved seating area (the "Lawn"). Around 9:00 p.m., Kami and Sherry Collins decided to leave, though the show was not over, because they were getting cold and hungry. To exit the Lawn area, they walked up the hill and then down a short slope of three to four feet to reach to a paved walkway. (See 10/19/2004 Deposition of Sherry Gray Collins ("S. Collins Dep.") at 56:6–12, 58:23 - 59:3.)

According to Sherry Collins, she was walking with Kami at her side at normal speed (S. Collins Dep. at 61:8–11), watching where she was going (S. Collins Dep. at 62:3–7), and had almost reached the paved walkway when she stepped in a hole and fell backwards, breaking her leg (S. Collins Dep. at 65:19–25). Ms. Collins did not see the hole before or after she stepped in it but she is sure that she stepped into a hole and that is what made her fall. She claims she could feel the hole underneath her broken leg as she lay on the ground after her fall. (S. Collins Dep. at 66:3–25, 67:1–10.) She was in excruciating pain at the time, to the point of nausea and nearly, but not quite, losing consciousness. (S. Collins Dep. at 68:6–19.) Ms. Collins could not say when the hole was created or how long it had been there. (S. Collins Dep. at 68:20 - 69:1.) She did not remember telling anyone at the time she fell that she had fallen in a hole. (S. Collins Dep. at

2

71:12–72:16.)  However, she also stated she was in so much pain she was not sure what she said.  (S. Collins Dep. at 72:1–2, 77:5–8.)  She assumed she told someone about the hole the night of the accident, but because she was so "out of it" with pain at the time, she was not sure.  (S. Collins Dep. at 120:6–17.)

Kami Collins testified that she was walking in front of her mother rather than beside her at the time of the accident, so she did not see her mother fall.  Instead, she heard a "pop" and turned around to see her mother on the ground.  (12/16/2004 Deposition fo Kami Jill Collins ("K. Collins Dep.") at 22:14–22.)  Kami ran back to their group to tell her brother their mother had fallen and broken her leg.  (K. Collins Dep. at 22:4–9.)  Kami and her brother went back to tend to their mother and also got additional help.  (K. Collins Dep. at 22:10–13.)  According to Kami, her mother did not at the time of the fall explain how she fell or mention that there was a hole in the ground.  Kami testified she did not see a hole nor tell anyone that her mother had fallen because she had stepped in a hole.  Specifically, she did not tell Patricia Beels there was a hole, nor did she point out a hole to Ms. Beels.  (K. Collins Dep. at 23:25 -25:13.)

Kami's testimony is directly contradicted by that of Patricia Beels.  Ms. Beels testified that after Kami came running up to the group saying that her mother had fallen and broken her leg, she got up immediately and accompanied Kami, Andrew and Rebecca Collins to where Ms. Collins had fallen.  (12/15/2004 Deposition of Patricia Ann Beels ("P. Beels Dep.") at 11:3–11.)  According to Ms. Beels, the on-site EMTs did not arrive right away.  After they did arrive and began attending to Ms. Collins, Kami Collins came over to her and Ms. Beels asked her what happened.  (P. Beels Dep. at 12:12–23.)  Kami told her that Ms. Collins had stepped in a hole and fallen.  (P. Beels Dep. at 12:24 - 13:1.)  Ms. Beels said, "Where?"  Kami replied, "Right there," and Ms. Beels "looked straight down and there was a hole right there."  (P. Beels Dep. at 13:19–23.)[2]  According to Ms. Beels, the hole was closer to her than to Ms. Collins, and Ms. Collins was not lying across the hole but "right by it."  (P. Beels Dep. at 14:1–9.)  The hole was covered with grass, like the area around it, and Ms. Collins did not see it until Kami pointed it out to her.  (P. Beels Dep. at 15:25 - 16:2.)  Ms. Beels described the hole as "like a swoop," approximately two or three inches deep, four inches wide and five inches long.  (P. Beels Dep. at 14:22 - 15:22.)

Mr. Beels likewise did not see a hole, though he testified, rather vaguely, that he thought Kami Collins

---

[2] Kami Collins' statements to Ms. Beels are the subject of a motion filed by Defendant to exclude them on the basis that they are inadmissible hearsay (see Doc. No. 30), which the Court is discussed in a separate Memorandum and denied in an Order entered contemporaneously with this Memorandum Opinion.

3

mentioned that her mother stepped in a hole.[3] (12/15/2004 Deposition of William Carlton Beels, Sr., at 11:19 - 12:10.)

Shannon Beels did not recall hearing Ms. Collins say why or how she fell, nor did she hear Kami say anything about a hole. She did not recall anyone saying anything about a hole and she herself did not see a hole. (12/15/2004 Deposition of Shannon Patricia Beels at 14:3–23.)

Ms. Collins' son Andrew did not see or hear anyone mention that Ms. Collins had tripped and fallen because of a hole. Andrew's wife, Rebecca Collins, likewise did not see a hole or hear anything about a hole.

Heather Story gave a deposition as Pavilion Partners' 30(b)(6) witness. (12/22/2004 Deposition of Heather Story ("Story Dep.").) Ms. Story testified that she is the General Manager of the Starwood Amphitheater facility. (Story Dep. at 5.) Prior to every event, the facility has personnel perform a "series of inspections" for safety and cleanliness throughout the Pavilion. (Story Dep. at 13:3–10.) They inspect to make sure that any trenches are covered, electrical wires are taped down, the seats are in good repair, the bathrooms are clean, the grass is not muddy, and there are no "trip hazards." Trip hazards include, among other possibilities, sprinkler heads popped up, cords that are not taped down, holes or gullies or divots in the grass. (Story Dep. at 13:16 - 14:8.) If a small hole is found, it is filled in with sand or dirt. If a larger hole is found, the area is roped off. (Story Dep. at 14:9–14.)

Ms. Story testified that on April 5, 2003, she, Michael Workman, Ray Sanderson, and Patrick Leahy all participated in performing the pre-concert inspection. (Story Dep. at 18:12–20.) Other maintenance employees might also have participated. (Story Dep. at 19:1-4.) There was not a pre-show checklist in existence at the time, but according to Ms. Story, she and her three colleagues all inspected the grass seating area to make sure that it was free of trip hazards. She personally checked out the entire Lawn seating area, along with Patrick Leahy, and did not find any holes or divots in the grass. (Story Dep. at 20–23.) Ms. Story also stated that from 200 to 300 event staff roamed throughout the concert grounds continually during the show on the evening of April 5 to make sure the patrons were safe. (Story Dep. at 28:13 - 29:3.) Ms. Story also conceded, however, that if there was a hole in the grass, Pavilion should have known about it. (Story Dep. at 34:10–18.)

Michael Workman, Pavilion's former Director of Event Operations, also testified that he personally

---

[3]The Court notes that Mr. Beels' statement about what Kami said is likely inadmissible hearsay.

4

would "always do a preshow walk-through throughout the day, sometimes maybe even several times a day," of all public areas of the amphitheater, including the Lawn, before any concert. (12/9/2004 Deposition of Richard Michael Workman ("Workman Dep.") at 9:14–20.) His inspection included a "walk-through, a visual inspection back and forth across the lawn." (Workman Dep. at 10:15–16.) According to Mr. Workman, the April 5, 2003 concert that Ms. Collins attended was the first show of the season, so more precautions than normal would have been taken during the days leading up to it. (Workman Dep. at 12:13–25.) He personally inspected the lawn on April 5, 2003, during which he looked for but did not find any holes or divots. (Workman Dep. at 13:1–15.) In addition, Mr. Workman inspected the area where Ms. Collins fell immediately after Ms. Collins was removed from the spot. He did not find any muddy or wet spots, nor any holes, debris or other type of trip hazard. (Workman Dep. at 22:8 - 23:14.) Mr. Workman took photographs of the area and wrote up an incident report in which he stated that a guest "slipped and fell while exiting the lawn area." (Def.'s Ex. J.) The report further indicates that Mr. Workman checked the area of the fall for possible moisture, mud or a worn area, but found none. (Id.) According to Mr. Workman, he actually got down on his hands and knees to examine the area where Ms. Collins fell, and did not find any holes. (Workman Dep. at 33:4–15.)

## II.     ANALYSIS

Pavilion Partners argues that (1) there is no evidence that any defect existed on Pavilion's premises that caused Plaintiff's fall and (2) even if such a condition did exist, there is no evidence that supports Plaintiff's claims that Pavilion either knew or should have known of its existence.

In Tennessee as elsewhere, business owners are not insurers of their patrons' safety. Rather, they are required to use due care under all the circumstances. Martin v. Washmaster Auto Ctr., U.S.A., 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996). "Liability in premises liability cases stems from superior knowledge of the condition of the premises." McCormick v. Waters, 594 S.W.2d 385, 387 (Tenn. 1980). In order for a business owner to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: (1) a dangerous condition existed and (2) the condition was caused or created by the owner, operator, or his agent, or (3) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident. Washmaster Auto Ctr., 946

5

S.W.2d at 318 (citing Ogle v. Winn-Dixie Greenville, Inc., 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995); Jones v. Zayre, Inc., 600 S.W.2d 730, 732 (Tenn. Ct. App. 1980)). The Tennessee Supreme Court has held that constructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition. Simmons v. Sears, Roebuck & Co., 713 S.W.2d 640, 641 (Tenn.1986), cited in Blair v. West Town Mall, 130 S.W.3d 761, 764 (Tenn. 2004).

In this case, in the face of substantial evidence that there was no hole, Ms. Collins nonetheless has succeeded in creating a fact question as to the existence of the hole by virtue of her insistence that she felt the hole when she stepped in it and felt it underneath her after she fell. Ms. Beels' testimony, while somewhat ambivalent since it is unclear whether the hole she allegedly saw next to Ms. Collins is the same one that Ms. Collins felt underneath herself, nonetheless may be considered to corroborate Ms. Collins' testimony, despite Kami Collins' denial of Ms. Beels' version of events. In short, the Court cannot say for sure that a reasonable jury, observing the demeanor and assessing the credibility of the witnesses, might not decide to credit Ms. Collins' and Ms. Beels' testimony and to disregard that of the other witnesses. Accordingly, there is a material fact question as to whether a dangerous condition existed.

Similarly, despite the undisputed evidence regarding the precautions Pavilion Partners took prior to the concert, and despite Ms. Collins' inability to provide evidence as to when the hole came into existence, if the jury determines that there was a hole and that the hole was a dangerous condition that caused or contributed to Ms. Collins' accident, then the jury might logically deduct that the hole was in existence at the time Pavilion's representatives performed their pre-show inspection, and that they either saw the hole or should have seen it and repaired it. Again, a very close question is presented. Defendant has presented evidence regarding its standard practice before each show and the precautions it took before the concert on April 5, 2003. For instance, at least four people inspected the Lawn seating on the day of the show, looking for potentially dangerous conditions, and none of these persons reported seeing a hole in the vicinity of Ms. Collins' fall or anywhere else. However, "the lack of a report of [holes] from those who had the duty to report same is not conclusive evidence that there were no [holes]." Bond v. Belle Meade Fund Partners, No. 96C-4542, 1998 WL 775662 (Tenn. Ct. App. Nov. 9, 1998). Further, Pavilion admits that it had a duty to check for holes in the Lawn area that might cause people to trip and that it had a duty to repair such a hole or rope

6

off the area to prevent people from tripping in it. Thus, the Court must conclude that there is a genuine issue of disputed fact, and thus a jury question, as to whether Pavilion was negligent in failing to see the alleged hole, and that in the exercise of reasonable care, its representatives would have seen and repaired the hole.

### III. CONCLUSION

Because Plaintiff has succeeded in creating a jury question as to (1) the existence of a dangerous condition on Defendant's premises and (2) whether the Defendant knew or should have known about the condition and taken steps to repair it, Defendant's motion for summary judgment will be denied. An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge